OPINION OF THE COURT
Leonard Scholnick, J.
The Long Island College Hospital (LICH) brings this uncontested miscellaneous proceeding for cy pres relief pursuant to EPTL 8-1.1 (c).
Factual Background
LICH, a not-for-profit hospital corporation located in Brooklyn, New York, is the beneficiary of restricted gifts under the last will and testament of Dr. Donald F. Othmer dated August 5, 1994 (Donald’s Will and Donald, respectively) and under the last will and testament of Mildred Topp Othmer dated August 8, 1988 (Mildred’s Will and Mildred, respectively). Donald died on November 1, 1995, and his will was admitted to probate by this court on July 8, 1996; Mildred died on April 8, 1998, and her will was admitted to probate by this court on December 30, 1998.
Articles nine, eleven and twelve of Donald’s Will are pertinent to LICH’s application. Article nine provides in relevant part as follows:
“I give, devise and bequeath the following amounts to the following institutions * * *
“(b) To Long Island College Hospital, Brooklyn, New York, the sum of $3,500,000 as the Othmer Endowment Fund, to be held in perpetuity and the income only to be used for general purposes. This is in addition to the $1,000,000 that my wife and I gave to the hospital for the same purpose in December of 1988.”
Donald also bequeathed a significant portion of his estimable residuary estate to LICH pursuant to Article eleven, section I (5% of up to a maximum of $10 million) and section II (one quarter of the balance of the residuary). He directed therein that these amounts be added to the Othmer Endowment Fund (the Fund) and administered under the conditions established by Article nine, clause (b) (supra). Finally, Article twelve of Donald’s Will provides that if any of the institutional beneficiaries named in Articles nine and eleven of the will are (1) no longer in existence, or (2) no longer qualify as tax exempt under section 2055 (a) of the Internal Revenue Code of 1986 (26 USC), as amended, or the corresponding provision of any subsequent *124 Federal tax law, or (3) a condition placed upon the gift is not satisfied, then in that event one quarter of any undistributed amount shall be distributed to LICH as set forth in section II of Article eleven, i.e., to be added to the Fund, to be held in perpetuity and the income only to be used for general purposes.
Articles eight, ten and eleven of Mildred’s Will contain similar provisions relevant to LICH. Article eight, for instance, provides in part as follows:
“I give the following amounts to the following charitable institutions:
“(b) To Long Island College Hospital, Brooklyn, New York, the sum of $4,000,000, or [sic] as the Othmer Endowment Fund, to be held either in perpetuity and the income to be used for general purposes, or in part or in whole for the construction or acquisition of a building to be called the Donald F. and Mildred Topp Othmer building.”
Like Donald, in Article ten of her will Mildred also bequeathed a significant portion (20%) of her residuary estate to LICH, to be added to the Fund and administered under the conditions established by Article eight, clause (b) (supra). Finally, Article eleven of Mildred’s Will provides that if any of the charitable beneficiaries under Articles six, eight or ten of her will are defunct, do not qualify as tax exempt under the pertinent Federal tax laws, or a condition placed upon the gift is not satisfied, the undistributed amount shall instead be distributed to the existing and qualifying charities under Article ten “in such manner that each qualifying charity shall receive such pro rata portion of the undistributed amount as the total of such charity’s aggregate gifts under said Article bears to the total of all gifts in said Article to all qualifying charities.”
The combined historic dollar value of the corpus of the Fund is $134,822,599.54, of which $37,021,495.22 is attributable to Donald’s bequests and $97,801,104.32 is attributable to Mildred’s bequests.[1] (It generated income of approximately $10 million in 1999.) Since the monies have already been distributed to and vested in LICH, the only interested parties to this *125 proceeding are LICH and the Attorney General of the State of New York. The court takes especial note of the fact that the Attorney General has submitted an affidavit in support of the cy pres application.
Several dramatic changes in the health care industry, particularly since 1995, have negatively impacted the financial status of many New York hospitals. Among the changes witnessed by the hospitals are (1) the growth in managed care for both privately insured and Medicaid patients, with attendant high administration costs and reduced reimbursement rates, (2) the deregulation of the private sector hospital rate-setting system under the Health Care Reform Act of 1996, (3) the reduction in Medicare revenue enacted in the Balanced Budget Act of 1997, which is being phased in over five years beginning in 1998, (4) the increasing numbers of uninsured patients, and (5) the shifting of emphasis from higher-paying in-patient care to lower-paying ambulatory care.
As a result of the severe economic pressures exerted on it because of these numerous changes, LICH finds itself in dire financial straits. Since it has already maximized its debt capacity, LICH now petitions the court to exercise its cy pres powers (1) to modify the restrictions in Donald’s and Mildred’s Wills to allow the hospital to use a sufficient portion of the Fund to secure approximately $89.1 million of new financing that would be used for the implementation of strategic capital projects ($63.4 million) and the issuance of working capital ($25.7 million), and (2) to interpret Mildred’s Will to permit the expenditure of a part of the Fund attributable to her for the acquisition (approximately $10 million) and for the renovation and improvement (approximately $5 million) of a medical treatment facility at 340 Court Street in Brooklyn. LICH emphasizes that these measures are necessary if it is to compete successfully and survive economically in the changing health care environment.
*126 The Law and Analysis
The cy pres doctrine codified in EPTL 8-1.1 is based on a policy to effectuate the general charitable intention of a donor or testator where the specific donative direction cannot be carried out, or is no longer practicable. This is achieved by devoting the donated property to a use that furthers the donor’s general intention while avoiding the circumstances that have rendered the original instructions impracticable. Before a court may properly apply the cy pres doctrine, it must find these three conditions: (1) the gift or trust must be charitable in nature; (2) the language of the will or trust instrument, when read in the light of all attendant circumstances, must indicate that the donor demonstrated a general, rather than specific, charitable intent; and (3) it must be determined to the court’s satisfaction that the particular purpose for which the gift or trust was created has failed, or has become impossible or impracticable to achieve. Once these tests are met, EPTL 8-1.1 (c) provides the court with the power to direct an order freeing the bequest from restrictions and limitations and providing for the administration of the trust property in a manner which will most “effectively accomplish its general purposes” (see, 5 Rohan, NY Civ Prac 8-1.1 [2] [b]; 13 Warren’s Heaton, Surrogate’s Courts § 209.10 [6] [a] [6th ed rev]). The language of the statute provides in pertinent part as follows: “[W]henever it appears to [the] court that circumstances have so changed since the execution of an instrument making a disposition for religious, charitable, educational or benevolent purposes as to render impracticable or impossible a literal compliance with the terms of such disposition, the court may, on application of the trustee or of the person having custody of the property subject to the disposition and on such notice as the court may direct, make an order or decree directing that such disposition be administered and applied in such manner as in the judgment of the court will most effectively accomplish its general purposes, free from any specific restriction, limitation or direction contained therein.” (EPTL 8-1.1 [c].)
With respect to the first condition that must be satisfied .. before cy pres may be applied, there is no doubt that Donald’s and Mildred’s gifts to LICH were charitable in nature. LICH is a charitable institution devoted primarily to caring for, treating and providing medical and surgical services for the sick and disabled in the Brooklyn community. Any gift or bequest for the promotion or advancement of health or medicine has always been recognized as a charitable gift (see, Matter of Law *127 less, 194 Misc 844, affd 277 App Div 1045; Matter of Staten Is. Univ. Hosp., NYLJ, Apr. 23, 1993, at 27, col 4).
With respect to satisfying the second condition, there are several indications that the Othmers had a general, not specific, charitable intent in making the gifts to LICH. For one thing, where a trust settlor or donor of a gift shows an inclination to benefit a variety of charities, a court is likely to conclude that the donor had a general charitable intent and to apply the cy pres doctrine in the appropriate circumstances (see, e.g., Matter of Bowne, 11 Misc 2d 597 [in finding sufficient charitable intent to apply cy pres, the court considered 15 charitable gifts totaling $500,000 in decedent’s will, together with $371,000 in lifetime charitable gifts]). In the present situation, a reading of Donald’s and Mildred’s Wills in their entirety leaves no doubt that they had the requisite general charitable intent. In addition to the millions of dollars in lifetime and testamentary gifts to LICH, both Donald and Mildred bequeathed all but an infinitesimal amount of their vast millions to numerous other charities.
The cy pres doctrine also applies when the grant in question .is general in character, or gives the charitable trustee/donee substantial discretion in the use of the funds (see, e.g., Matter of Hendrick, 4 NY2d 744 [cy pres was applied to save a grant to a medical college that became part of the State University, because the grant was to be used in the manner that the faculty, in its discretion, considered most likely to promote medical and surgical knowledge]; see also, Matter of Kittinger, 36 Misc 2d 385). In this case, both Donald’s and Mildred’s Wills directed that their gifts be used for LICH’s general purposes, thus giving the hospital substantial discretion in deciding where to apply the funds.
Another indication of the Othmers’ general charitable intent toward LICH is the absence of a gift over of its bequests (see, e.g., Matter of Goehringer, 69 Misc 2d 145, 149-150 [where the charitable disposition has vested and there is no specific gift over, cy pres will invariably be applied]; see also, Matter of Carper, 67 AD2d 333, 337, affd 50 NY2d 974; Matter of St. Charles Hosp., NYLJ, Aug. 4, 1995, at 25, col 6).
Insofar as the third condition, LICH finds itself on the brink of bankruptcy. If the hospital is forced to close, the intent and purpose of Donald’s and Mildred’s gifts to it will become impossible or impracticable to achieve. LICH emphasizes that the approximate $10 million in income generated by the Fund in 1999 is not sufficient to keep it in operation on a long-term basis.
*128 In a similar situation where a hospital was faced with mounting operating deficits that threatened to close it down and a generous patron had left it a $1 million bequest with restrictions analogous to those placed on the Othmer Fund,[2] the court found it appropriate to exercise its cy pres powers to prevent the suspension of a valuable community service and the failure of a definite charitable purpose (see, Knickerbocker Hosp. v Goldstein, 181 Misc 540 [1943], supra). Specifically, the court allowed the hospital to use so much of the principal of the bequest as was necessary to keep it in operation, free from the limitation specified in the bequest, and thus made it possible to accomplish the benefactor’s purpose. The Knickerbocker court mentioned several factors which convinced it that the testator’s general charitable purpose was the hospital’s continued existence. It said in part as follows: “The close association of the testator with the hospital, his activities in its behalf, and his generous benefactions and endowments for its support during his lifetime, evince his general interest in its maintenance as a hospital. The bequest to it of a substantial part of his estate indicates a paramount desire that it shall be continued as a hospital. The will speaks of its ‘continuing’ operation.” (Supra, at 544.)
Everything that was said in this vein about the testator in Knickerbocker (supra) can also be said about the Othmers. Specifically, during their lifetimes Mildred and Donald were closely associated with LICH and engaged in many activities to promote its existence and ensure its continuing medical service to the community. (Refer to footnote 1 for more detail about the Othmers’ lifetime contributions to LICH.) They also made substantial monetary contributions to this end, both inter vivos and testamentary. Accordingly, like the Knickerbocker court, this court can conclude that the Othmers would want LICH to continue as a hospital. Since that has become impracticable in light of the current financial strictures faced by LICH, it is proper that the court exercise its cy pres powers to prevent the “suspension of a valuable community service * * * [and the] failure of a definite charitable purpose.” (Supra, at 543.)
The Knickerbocker court also discussed the fact that the testator could not have foreseen the vast changes that would *129 occur (the advent of a World War and the accompanying economic stress) that would render his “restricted” gift of $1 million insufficient to maintain, in perpetuity, an institution of the limited scope of a hospital of that time. The court concluded that such changed conditions are the “ ‘changed circumstances’ ” referred to in the statute that call for a court’s intervention to direct an administration that “will most effectively accomplish the general purpose of [the instrument], without regard to and free from any specific restriction, limitation or direction contained [therein]” (supra, at 544-545).
This court believes that Donald and Mildred, like the testator in Knickerbocker (supra), could neither have foreseen the extensive changes that would occur in the health care industry in such a short time nor have known how detrimental such changes would be to LICH financially. The court also believes that at the time they executed their wills, the Othmers, particularly Mildred, who became mentally confused and was confined to a nursing home from the early 1990’s until her death in 1998, could not have foreseen the exponential growth of their assets. The court is persuaded, based on their historical pattern of philanthropy and generosity to LICH, that the Othmers would want the survival of the hospital above all and to that end would remove the testamentary restrictions on the Fund in the current economic climate.
In a more recent case, another hospital was faced with economic problems that threatened to close it down. The hospital petitioned for cy pres relief, to permit it to pledge restricted funds gifted to it so that it could obtain the financing to implement a comprehensive restructuring plan (Matter of St. Charles Hosp., NYLJ, Aug. 4, 1995, at 25, col 6 [supra]). In the provision of the will at issue in that case, the testator bequeathed a portion of the residuary estate to the hospital for the creation of a fund, “of which the income shall be expended for charitable purposes.” (Supra, at 25, col 6.) The will was silent as to the use of the principal. The court granted the cy pres relief requested, finding that literal compliance with the “income only” provision of the gift was impracticable. That was so because the income from the gift, even when combined with the hospital’s other sources of revenue, was insufficient to modernize the hospital and, without such modernization, the hospital would be forced to shut down.
Literal compliance with the restrictive provisions of the Othmer Fund is likewise impracticable because the income alone is insufficient to assist LICH in its continued operations and *130 offering of medical services, a situation that will lead to its bankruptcy. Such result would frustrate the Othmers’ general charitable objectives. However, modification of the restrictions, to allow a sufficient portion of the Fund to be used to secure new financing to implement LICH’s recovery plan, will cure the impracticability and fulfill the Othmers’ general charitable intent.
Conclusion
In conclusion, the court finds that LICH has met the three required tests for application of the cy pres doctrine under EPTL 8-1.1. For that reason and also in reliance on the Attorney General’s support of the relief requested, the court grants LICH’s cy pres petition in its entirety.

. In addition to the testamentary gifts, Donald and Mildred made size-able monetary contributions to LICH during their lifetimes. One $1 million donation was used to establish the Othmer Cancer Center and another $1 million donation was made to the Give to Life Campaign. The Othmers also contributed their time, energy and financial expertise to LICH. For example, as early as 1969 Mildred volunteered as a member of the Women’s Guild and promoted numerous fundraising events over the years. Donald served on *125 LICH’s Board of Regents for 22 years and was also a member of many LICH Committees, including the Financial Operations Committee, the Joint Conference Committee, the Insurance Committee and the Medical Affairs Committee. His involvement in the various Committees included working directly with doctors and chief administrators to determine LICH’s fiscal policies and procedures. In sum, the Othmers had a lifetime pattern of philanthropy to LICH and described it as a “favorite institution” and as their “mutual top priority.”

. The language of the bequest stated in pertinent part as follows: “ ‘the principal of such sum to be kept invested and the income thereof to be maintained as a permanent investment during the continuing operation of the [Manhattan] Dispensary, and the yearly income thereof to be used for its general purposes.’ ” (Knickerbocker Hosp. v Goldstein, 181 Misc 540, 543.)