OPINION OF THE COURT
Cathryn M. Doyle, J.
The court presently has pending before it two special proceedings and a breach of contract action involving trust agreements created by Jane M. Hummel and her husband, Vincent D. Hummel. Jane and Vincent Hummel executed revocable, reciprocal living trust agreements on May 9, 1991. Each agreement established a trust for the benefit of the grantor during their lifetime, and thereafter for the benefit of the grantor’s spouse. *998 The remainder of each trust was to be divided equally among the same three charitable beneficiaries in an unrestricted form, to be applied to the recipients’ purposes as their respective governing bodies deemed appropriate. Jane M. Hummel passed away on June 15, 1994, and Vincent D. Hummel passed away on February 26, 2001. Accordingly, both trusts have terminated.
Fleet National Bank, as trustee of each trust, has petitioned the court for judicial settlement of its accounts.* The trustee has also asked the court to determine the proper disposition of the trust remainder gifts to “Child’s Hospital, 25 Hackett Blvd., Albany, New York.” In June 1999, Child’s abandoned its hospital purposes and converted to a nonhospital charitable corporation which supports the Episcopal Diocese of Albany, Inc. Child’s amended its certificate of incorporation to formalize its 1999 cessation of hospital functions. The amendment includes new purposes for Child’s, and expressly precludes Child’s from providing any health-related services. As further part of Child’s transformation, it changed its name to Episcopal Charities of Albany, Inc. and, pursuant to an asset purchase agreement, sold all or substantially all of its assets to Albany Medical Center Hospital and its affiliate, Albany Medical Center-South Clinical Campus (hereinafter AMC-SCC). AMC-SCC was created by Albany Medical Center to implement the purchase and operation of Child’s hospital assets, and AMC-SCC currently operates an article 28 hospital at the address and facility once operated by Child’s as a hospital. Notably, Child’s obtained court approvals for its transformation, on notice to the Attorney General, through a petition filed with the court in June 1999.
In a related matter, Episcopal Charities commenced a breach of contract action against AMC-SCC, Albany Medical Center and Fleet National Bank, as trustee of the aforementioned trusts. Episcopal Charities alleges that, pursuant to the asset purchase agreement it entered into with AMC-SCC and Albany Medical Center, it is entitled to the one-third remainder interest of “Child’s Hospital, 25 Hackett Blvd., Albany, New York.”
Presently, there are numerous motions pending before the court with respect to the two accounting proceedings and breach of contract action. All parties have moved for summary judgment in their favor and several parties have moved to consolidate these proceedings.
*999 Factual Background
There are no major disputes regarding the facts and circumstances of this case. The court will attempt to summarize the relevant facts, drawing from the various affidavits and memoranda of law submitted by the parties.
Trust Terms
The trust agreements entered into by the Hummels provide, in relevant part, that following the death of the grantor’s spouse, the trust would terminate and its remainder divided equally among the following three charities:
“a. I direct that One (1) said equal Share of the residuary Trust property be given to THE FIRST UNITED METHODIST CHURCH, at 428 Kenwood Avenue, Delmar, New York. This bequest is unrestricted and the Board of Trustees or other governing body may use and expend the same for the benefit of such FIRST UNITED METHODIST CHURCH in any manner it deems appropriate. The receipt of the Treasurer of the Board of Trustees shall be a sufficient discharge of this bequest.
“b. I direct that One (1) said equal Share of the residuary Trust property be given to ALBANY MEDICAL CENTER HOSPITAL, New Scotland Avenue, Albany, New York. This bequest is unrestricted and the Board of Trustees or other governing body may use and expend the same for the benefit of such ALBANY MEDICAL CENTER HOSPITAL in any manner it deems appropriate. The receipt of the Treasurer of the Board of Trustees shall be a sufficient discharge of this bequest.
“c. I direct that One (1) said equal Share of the residuary Trust property be given to CHILD’S HOSPITAL, 25 Hackett Boulevard, Albany, New York. This bequest is unrestricted and the Board of Trustees or other governing body may use and expend the same for the benefit of such CHILD’S HOSPITAL in any manner it deems appropriate. The receipt of the Treasurer of the Board of Trustees shall be a sufficient discharge of this bequest.”
Jane M. Hummel and Vincent D. Hummel
Jane M. Hummel was born on May 31, 1901, in Manchester, Vermont. Vincent D. Hummel was born on February 23, 1902, in Ashland, New York. On June 18, 1932, they were married in the First United Methodist Church in Delmar, New York, where *1000 Jane M. Hummel was a member for 63 years, and Vincent D. Hummel was a member for 72 years.
According to the affirmation of Carlton N. Pott II, Esq., the attorney who drafted the Hummels’ trust agreements, Jane and Vincent Hummel were longtime communicants of the First United Methodist Church in Delmar, and were devout Methodists. Pott asserts that he spoke with both Jane and Vincent Hummel at length regarding their dispositive intentions, and each wished to give the First United Methodist Church one third of their residuary estate. He also states that he was advised that both Jane and Vincent Hummel were treated at Child’s and that both wished to give one third of their residuary estate to that hospital to further patient care activities at that hospital. Pott did not discuss the possibility of a gift over in the event Child’s was sold, closed, or ceased to exist because that event was not anticipated. He further states that neither Jane nor Vincent Hummel ever expressed an intent or desire to give any part of their estate to the Episcopal Diocese, or to any charity affiliated with the Diocese. Pott asserts that the Hummels’ charitable intentions would be fulfilled as closely as possible if their gifts to Child’s went to AMC-SCC.
The Sale of the Assets of Child’s Hospital to AMC-SCC
Child’s was established in 1874 by sisters of the Albany Episcopal Diocese. In 1928, the Legislature issued a charter to Child’s and the Episcopal Diocese transferred the hospital property to this new entity. In 1966, Child’s built a new facility located at 25 Hackett Boulevard in the City of Albany. It moved its operations to this site and operated a hospital under a license issued pursuant to article 28 of the Public Health Law.
In 1999, Child’s Hospital was losing a significant amount of income and the corporation sought to sell substantially all of its assets. According to the verified petition of Child’s and Samaritan Service Corporation, dated June 4, 1999, Child’s believed that it was in the best interests of the community served by Child’s to sell its assets to Albany Medical Center and AMC-SCC, who intended to utilize Child’s assets to further the charitable mission of providing health care services to Albany and surrounding communities. The 1999 asset sale contract provided for the sale of all the operating assets, including goodwill and the name “Child’s Hospital.” Cash and certain short-term investments were retained by the seller. According to the affidavit of one of the officers of the purchasing corporation, the sale price of $10.5 million was substantially above the *1001 book value of the assets, and from the point of view of the buyer, included a substantial amount for intangibles.
Section 10.12 of the asset sale contract addresses the issue of bequests, donations, pledges, and donor restricted funds. This term of sale is claimed by Episcopal Charities as the basis for its contract action against Albany Medical Center and AMC-SCC.
Section 10.12 provides as follows:
“Bequests, donations, pledges, and donor-restricted funds. Sellers agree that funds held by Child’s and Samaritan which are restricted in whole or in part for use by Child’s and/or Samaritan shall continue to be provided for the benefit of the operations of the former Seller according to existing restrictions on those funds following the Closing. Sellers shall transfer to Buyer at Closing all their right, title and interest in the items constituting the balance sheet caption ‘Donor restricted Accounts’ which the parties agree cannot be legally transferred to Buyer, and which are set forth in Schedule 10.12. All items constituting the balance sheet caption ‘Donor restricted Accounts’ which the parties agree cannot be legally transferred to Buyer shall be retained by Sellers, or their successors in interest, for administration consistent with the donor’s intent. Buyer agrees that any bequests, contributions, donations and pledges made to Sellers which are now held or payable now or in the future to the Child’s Hospital that are both (a) made with the intention that they benefit The Child’s Hospital as currently owned and sponsored by the Episcopal Diocese and (b) are not restricted in any way, shall be the property of Sellers and Buyer agrees to forward to Sellers any such proceeds in the event Buyer receives such proceeds after Closing.”
The Purposes of AMC-SCC
AMC-SCC is a New York not-for-profit corporation exempt from taxation under Internal Revenue Code (26 USC) § 501 (c) (3). It was formed by Albany Medical Center for the purpose of participating in the purchase of the Child’s Hospital facility pursuant to the asset sale agreement. The sale having been completed, it presently holds a license under Public Health Law article 28 to operate a hospital at 25 Hackett Boulevard, Albany, New York. With the exception of the *1002 name and the dates, AMC-SCC’s license under article 28 is identical to the license formerly held by Child’s. AMC-SCC currently has 20 licensed beds, the same number as were licensed to Child’s Hospital.
The Operations of AMC-SCC After the Purchase of Child’s Hospital
AMC-SCC operates the same kind of hospital at the same facilities with many of the same employees and staff as prior to the sale. As part of the asset sale contract, Albany Medical Center and AMC-SCC agreed to continue for two years the employment of each employee of Child’s. Consequently, as of the day after the closing, AMC-SCC had the same employees as Child’s Hospital had the day before. However, some employees, principally in administration, were shifted to locations other than Child’s, since one of the goals of the purchase of Child’s by an Albany Medical Center affiliate was to achieve efficiencies of scale in the administration of the facility.
By the end of December 2002, AMC-SCC had invested $7.3 million in renovation and capital improvements in the facilities, and has relocated and renovated the nursing unit and other areas to allow for the development and relocation of the urology center, which opened in 2000. Since the date of the sale, AMC-SCC has successfully recruited additional patient care staff and has equipped an additional state-of-the-art operating room. The number of procedures performed annually increased from 6,517 in 1999 to 9,372 in 2002. Albany Medical Center’s submissions recite a number of improvements and expansions of service that have occurred since the transfer of ownership, which support a conclusion that AMC-SCC intends to maintain and continue the operation of the facility for the foreseeable future.
The Purposes of Episcopal Charities
By order dated June 4, 1999, Supreme Court approved a change of the name of the corporation known as “The Child’s Hospital” to “Episcopal Charities of Albany, Inc.” Prior to 1999, purposes were not specified in the articles of incorporation of Child’s. The June 4, 1999 order approved amendment of the certificate of incorporation of the renamed corporation to include the following purpose:
“The maintenance of a charitable corporation, initially established from the proceeds of the sale of The Child’s Hospital, through which health care related educational and religious programs and works *1003 of charity related to the health care needs of individuals within the 19 counties of the Diocese of Albany may be funded in accordance with the doctrines, discipline, and worship of the Protestant Episcopal Church in the Diocese of Albany . . .
“[T]he Corporation shall not establish, operate or maintain a hospital or provide hospital service or health related service, or operate a home care services agency, a hospice or a health maintenance organization, or provide a comprehensive health service plan, as defined in and covered by Articles 28, 36, 40, and 44, respectively of the Public Health Law, nor perform fund-raising activities or solicit contributions on behalf of or in support of any hospital licensed under Article 28 of the New York State Public Health Law.”
Accordingly, Episcopal Charities is precluded from operating a hospital. Thus, as of the date of the termination of the Hummel trusts on February 26, 2001, the remainder beneficiary referred to in the trusts as “Child’s Hospital” had changed its name to “Episcopal Charities of Albany, Inc.” and amended its certificate of incorporation to preclude it from operating a hospital or providing any form of hospital related service.
The Activities of Episcopal Charities Since the Sale
The activities of Episcopal Charities and the uses to which it has put the proceeds of the sale of the hospital facility since its transformation into a charitable foundation was made part of Albany Medical Center’s submission. Since the date of sale, Episcopal Charities’ principal expenditures have been payment of salaries and expenses of active and retired priests of the Episcopal Diocese of Albany, and other expenditures for the benefit of the Episcopal Diocese, its clergy, and its employees. The health-related activities of Episcopal Charities are significantly different from those performed by Child’s prior to the sale. The expenditures of this nature are for health insurance premiums for retired priests and for the funding of a Spiritual Life Center which is to focus on wellness and healing ministries. Health care is considered to be for the mind, body, and spirit, with an emphasis on the “spiritual” health, rather than direct medical treatment as provided by the former Child’s Hospital. According to the financial statements produced, Episcopal Charities made substantial expenditures to pay the salaries of new or existing Episcopal priests and deacons.
*1004 Title Purpose Amount
Chaplain Mentorship Ministry Pay salaries of existing or new parish priests or deacons in the Diocese “to enable small parishes to step out in faith for mission” and “to enlarg[e] the diocesan priestly skills in the area of pastoral care/priest as chaplain.” $253,000
Counseling Service of the Episcopal Diocese of Albany, Inc. Relocation to provide privacy for clergy using the service and more parking for service and diocese $35,000
Episcopal Counseling Service Assessment, referral, and short-term counseling services to Diocesan clergy and families and full and part-time employees of parishes and Diocesan office $10,000
Episcopal Diocese Funds to improve access to churches for the disabled $50,000
Motion to Consolidate
Respondent First United Methodist Church moves for an order pursuant to CPLR 602 consolidating the two accounting proceedings and for summary judgment in their favor. The Attorney General moves separately for, among other things, consolidation. Episcopal Charities opposes the two motions for consolidation and cross-moves for summary judgment in their favor.
CPLR 602 (a) authorizes the court, upon motion, to consolidate more than one action when the actions involve a common question of law or fact. Here, Fleet National Bank, as trustee of each trust, has petitioned the court for judicial settlement of its accounts. The trustee has also asked the court to determine the proper disposition of the trust remainder gifts to Child’s. It is clear that the two accounting proceedings should be consolidated to avoid unnecessary cost or delay; however, the breach of contract action initiated by Episcopal Charities against AMC-SCC, Albany Medical Center and Fleet National Bank should not be consolidated. Nevertheless, given the lengthy factual background of this matter, the breach of contract action will be addressed within this decision.
*1005 Motions for Summary Judgment
By initiating a motion for summary judgment, a party is presumptively asserting that there are no material questions of fact to be determined. Episcopal Charities has made its own motion for summary judgment, despite having asserted in an affidavit by its attorney sworn to on February 12, 2003 that there are multiple unresolved issues of fact arising out of statements in affidavits by the representatives of the Attorney General and representatives of Albany Medical Center and AMC-SCC. In a subsequent affidavit sworn to on February 14, 2004, Episcopal Charities asks that its motion for summary judgment be granted in its entirety.
The court has examined the statements in dispute and finds that they do not bear on the determinations to be made and do not prevent the court from proceeding with a consideration of the motions. The basis of Episcopal Charities’ request for accelerated judgment involves the doctrine of quasi cy pres, interpretation and effect of two prior Supreme Court orders, and questions concerning the legal effect of section 10.12 in the asset purchase agreement, all questions of law which the court can properly address.
Law and Analysis
As a part of its application for approval of its accounts for each trust, the trustee has asked the court to determine who is entitled to the remainder bequests to “Child’s Hospital.” AMC-SCC and First United Methodist Church have asked the court to direct distribution of these bequests to each of them. The Attorney General has taken the position that the bequests in question should be payed over to AMC-SCC under the doctrine of cy pres as codified in EPTL 8-1.1. Episcopal Charities in a separate action against Albany Medical Center and AMC-SCC is seeking money damages for an alleged breach of contract.
The principal question before the court is whether the bequests to “Child’s Hospital, 25 Hackett Boulevard, Albany, New York” should go to: (1) AMC-SCC, the entity which presently operates the hospital facility at 25 Hackett Boulevard, Albany, New York, and formerly known as “Child’s Hospital”; (2) to First United Methodist Church and Albany Medical Center Hospital, the two other remainder beneficiaries; or to (3) Episcopal Charities, which is the new name of the not-for-profit corporation formerly known as “Child’s Hospital.”
As stated before, the charitable beneficiary referred to in the Hummel trusts as “Child’s Hospital, 25 Hackett Blvd., Albany, *1006 New York,” subsequent to Jane and Vincent Hummel creating their trusts, sold substantially all of its assets, including its name, to another hospital, and converted to a charitable foundation devoted to a wide range of charitable purposes, one of which is health care. Elimination of the word “Hospital” from its name and its relinquishment of its right under its certificate of incorporation to operate a hospital have caused the trustee to question whether the successor entity, Episcopal Charities, is the proper party to receive these bequests, or whether the doctrine of cy pres should be invoked by a court to select another charitable beneficiary. The trustee of the Hummel trusts has properly asked the court to determine who is entitled to the remainder bequests to “Child’s Hospital.”
In order for the court to make a determination regarding this question, it first must address the findings and determinations made by the Court of Appeals in two cases interpreting the application of Not-For-Profit Corporation Law § 1005 (a) (3) (A). In Alco Gravure, Inc. v Knapp Found. (64 NY2d 458 [1985]), the Court of Appeals held that a court reviewing an application under Not-For-Profit Corporation Law § 804 of a type B not-for-profit corporation requesting an amendment to its certificate of incorporation allowing it to change its purposes to ones inconsistent with the purposes for which it was originally formed and funded must apply quasi-cy pres principles in making its determination. In Aleo, the Court was reviewing the decision in a proceeding under Not-For-Profit Corporation Law § 804 wherein a type B not-for-profit corporation obtained an amendment to its certificate changing its corporate purposes without the approving court having applied the doctrine of quasi cy pres in its determination. The Court of Appeals held that in an application under Not-For-Profit Corporation Law § 804, the provisions of the first sentence of Not-For-Profit Corporation Law § 1005 (a) (3) (A) must be applied using the quasi-cy pres concept of “engaged in activities substantially similar to those of the dissolved corporation,” rather than the customary cy pres standard of “will most effectively accomplish its general purposes.” (EPTL 8-1.1 [c] [1].)
In Matter of Multiple Sclerosis Servs. Org. of N.Y. (New York City Ch. of Natl. Multiple Sclerosis Socy.) (68 NY2d 32 [1986]), the Court of Appeals discussed in great detail the distinction between the quasi-cy pres principle found in Not-For-Profit Corporation Law § 1005 (a) (3) (A) and the more restrictive cy pres principle in EPTL 8-1.1. The Court reviewed the legislative *1007 history of these two statutes and the common-law cy pres doctrine which used a standard of “as nearly as possible” (at 35). In a footnote to his opinion, Judge Meyer, who a year earlier was the author of the opinion in the Aleo case, commented on the meaning and application of the second sentence of Not-For-Profit Corporation Law § 1005 (a) (3) (A) (at 40 n 6). This portion of the statute provides that except for “particular purpose” gifts and bequests, the organization determined to be the quasi-cy pres successor to the dissolving corporation, shall be the recipient of “[a]ny disposition contained in any will or other instrument, in trust or otherwise” (Not-For-Profit Corporation Law § 1005 [a] [3] [A]). (The facts of the case did not require the Court to apply or interpret this provision of the statute.)
It is agreed that the bequests in the Hummel trusts are not “particular purpose” bequests as the term is being used in the statute, and if the second sentence of Not-For-Profit Corporation Law § 1005 (a) (3) (A) is applicable in the case of a change of purpose amendment proceeding under Not-For-Profit Corporation Law § 804, the Hummel bequests would be payable to Episcopal Charities as the court-deemed successor to Child’s Hospital.
As set out previously herein, Child’s Hospital obtained a Supreme Court order allowing it to change its corporate purposes to ones not entirely consistent with the purposes for which it was originally formed, namely, operation of a hospital. This proceeding under Not-For-Profit Corporation Law § 804 allowed it to apply its existing, unrestricted assets to its new purposes which exclude operation of a hospital.
This court recognizes that as a part of the process of approving the changes requested by Child’s Hospital in its change of purposes amendment proceeding under Not-For-Profit Corporation Law § 804, the court in that prior proceeding necessarily applied the doctrine of quasi cy pres in deciding to approve the changes requested, and thereby authorized the application of the existing assets of the corporation to its new purposes as it was required to do under the holding in Alco (Alco Gravure, Inc. v Knapp Found., 64 NY2d 458 [1985], supra).
While in Aleo the Court of Appeals made the provisions of the first sentence of Not-For-Profit Corporation Law § 1005 (a) (3) (A) applicable to proceedings under Not-For-Profit Corporation Law § 804, it did not have to address the question of whether or not the provisions of the second sentence thereof having to do with dispositions under wills and trusts made before or after a *1008 dissolution would be applicable to dispositions under wills and trusts made before or after a purpose amendment proceeding under Not-For-Profit Corporation Law § 804.
The second sentence of Not-For-Profit Corporation Law § 1005 (a) (3) (A) provides, in relevant part: “Any disposition contained in any will or other instrument, in trust or otherwise, made before or after the dissolution, to or for the benefit of any corporation so dissolved shall inure to or for the benefit of the corporation or organization acquiring the assets of the dissolved corporation.”
The question arises, therefore, should this court assume that the Legislature and/or the Court of Appeals intended that the second sentence of Not-For-Profit Corporation Law § 1005 (a) (3) (A) govern dispositions contained in any will or other instrument made before or after a change of purpose amendment under Not-For-Profit Corporation Law § 804?
As previously pointed out, unlike articles 9 and 10 of the Not-For-Profit Corporation Law, there is no express guidance in article 8 concerning disposition of bequests under wills and trusts which take effect after a change of purpose amendment proceeding.
Not-For-Profit Corporation Law article 10, governing corporate dissolutions, expressly deals with this issue. The second sentence of Not-For-Profit Corporation Law § 1005 (a) (3) (A) provides that following a court approved dissolution:
“Any disposition contained in any will or other instrument, in trust or otherwise, made before or after the dissolution, to or for the benefit of any corporation so dissolved shall injure to or for the benefit of the corporation or organization acquiring the assets of the dissolved corporation as provided herein, and so far as is necessary for that purpose the corporation or organization acquiring such disposition shall be deemed a successor to the dissolved corporation: provided, however, that such disposition shall be devoted by the acquiring corporation or organization to the purposes intended by the testator, donor or grantor.”
The last part of the second sentence of Not-For-Profit Corporation Law § 1005 (a) (3) (A) requiring the successor corporation to apply the disposition to the purposes intended by the testator, donor or grantor, poses an interesting question when, as here is the case, the successor corporation is expressly *1009 prohibited from devoting the gift to the purpose presumably intended by the donors of the gift.
Not-For-Profit Corporation Law article 9, governing mergers and consolidations, likewise makes express provision for the treatment of bequests created under wills and trusts taking effect after a merger or consolidation. Not-For-Profit Corporation Law § 905 (b) (2) states:
“All the property, real and personal, including causes of action and every other asset of each of the constituent corporations, shall vest in such surviving or consolidated corporation without further act or deed, except as otherwise provided in paragraph Ob) of section 907 (Approval by the Supreme Court). Except as the court may otherwise direct, as provided in section 8-1.1 of the Estates, Powers and Trusts Law, any disposition made in the will of a person dying domiciled in this state or in any other instrument executed under the laws of this state, taking effect after such merger or consolidation, to or for any of the constituent corporations shall inure to the benefit of the surviving or consolidated corporation. So far as is necessary for that purpose, or for the purpose of a like result with respect to a disposition governed by the law of any other jurisdiction, the existence of each constituent domestic corporation, shall be deemed to continue in and through the surviving or consolidated corporation.”
In this statutory scheme, application of the provisions of EPTL 8-1.1 are expressly authorized and directed. Under this statutory scheme, any disposition in a will or trust taking effect after a merger must be reviewed by the court and the more restrictive requirements of the doctrine of cy pres contained in EPTL 8-1.1 applied. EPTL 8-1.1 (c) (1) requires a court to direct a disposition which in its “judgment . . . will most effectively accomplish its general purposes,” as opposed to quasi-cy pres requirements of “engaged in activities substantially similar.”
A Not-For-Profit Corporation Law article 8 change of purposes amendment proceeding is obviously not a dissolution proceeding under article 10. To this court, the merger provisions of article 9 are more relevant to an amendment proceeding under article 8 than the provisions applicable to a dissolution proceeding and should, therefore, be looked to for guidance. Corporate changes in the nature of merger or amendment involve corporations which are continuing their existence, not corporations that are *1010 going out of business. Mergers and consolidations do not result in the elimination of the primary operations of one of the merging corporate entities. Hospitals merge with other hospitals. The corporate purposes and mission of the individual corporations are not discontinued. The successor entity continues to represent and carry on the essential work of the predecessor.
This court concludes that the provisions of Not-For-Profit Corporation Law § 1005 regarding the disposition of gifts made to a dissolved corporation by will or trust should not be adopted and applied to dispositions under wills and trusts made to a corporation which has changed its purposes under Not-For-Profit Corporation Law § 804. There is significant distinction between a dissolving corporation and a corporation which intends to continue to operate.
The court finds a basis for distinguishing an amendment proceeding now before the court and the amendment proceedings occurring in the case of Alco (Alco Gravure, Inc. v Knapp Found., 64 NY2d 458 [1985], supra). When the amendment of the organization’s corporate charter is so substantial as to expressly exclude the primary purpose for which the previously chartered corporation existed, and as here occurred, there is a sale of substantially all of the assets of an operating entity to a new, but similarly constituted organization, this court believes that the determination of what entity is entitled to gifts and bequests under wills and trusts which take effect after the amendment proceeding is approved, is best determined under the traditional concepts of cy pres set forth in EPTL 8-1.1.
The court concludes that neither Not-For-Profit Corporation Law § 804, nor the holdings of the Court of Appeals in Alco (64 NY2d 458 [1985], supra) or Matter of Multiple Sclerosis Serv. Org. of N.Y. (New York City Ch. of Natl. Multiple Sclerosis Socy.) (68 NY2d 32 [1986], supra) requires this court to apply the provisions of the second sentence of Not-For-Profit Corporation Law § 1005 (a) (3) (A) to the bequests under the Hummel trusts.
Accordingly, the court finds that EPTL 8-1.1 is the applicable statutory procedure to be applied in answering the question presented in this proceeding. In reaching this conclusion, the court feels obligated to recognize the precedent established by other courts that general gifts to a hospital are intended to fund hospital activities, and when the designated hospital’s functions have ceased, even if its formal corporate existence continues, the doctrine requires that such gifts be redirected to an active, charitable hospital (see Matter of Coffey, 187 AD2d *1011 929 [1992]; Matter of Kraetzer, 119 Misc 2d 436 [Sur Ct, Kings County 1983]).
EPTL 8-1.1 (a), the statutory enactment of the cy pres doctrine, provides, in relevant part, that “[n]o disposition of property for religious, charitable, educational or benevolent purposes, otherwise valid under the laws of this state, is invalid by reason of the indefiniteness or uncertainty of the persons designated as beneficiaries.”
It is well settled that the statutory and case law of the state favors payment of a charitable bequest even when the beneficiary is indefinite or uncertain. EPTL 8-1.1 (c) (1) provides, in relevant part, that:
“[W]henever it appears to such court that circumstances have so changed since the execution of an instrument making a disposition for religious, charitable, educational or benevolent purposes as to render impracticable or impossible a literal compliance with the terms of such disposition, the court may, on application of the trustee or of the person having custody of the property subject to the disposition and on such notice as the court may direct, make an order or decree directing that such disposition be administered and applied in such manner as in the judgment of the court will most effectively accomplish its general purposes, free from any specific restriction, limitation or direction contained therein.”
EPTL 8-1.1 (d) provides that the power of the court to prevent the failure of, and to give effect to dispositions for religious, charitable, educational or benevolent purposes, is not defeated by the mere fact that the beneficiary of such a disposition does not exist.
The Hummels’ respective trust agreements do not provide for a contingency where one of the charitable remainder beneficiaries’ names and/or primary corporate purposes changed before the bequest was to take place. In most circumstances, a mere change of a name by a charitable beneficiary would not raise a serious question as to the identity of the intended beneficiary named in a bequest. However, given the circumstances of this case, primarily where there has been a change of name and an abandonment of the primary purpose for which the entity was originally formed, the court finds that there is an “indefiniteness or uncertainty” as to the person designated as beneficiary of the bequests to “Child’s Hospital, 25 Hackett Boulevard, *1012 Albany, New York.” Deletion of the word “Child’s Hospital” from the corporate name combined with a surrender of any authority to operate a hospital leads the court to conclude that there is a question as to what entity is entitled to the bequests.
As stated in Matter of Othmer (185 Misc 2d 122 [Sur Ct, Kings County 2000]), to apply the doctrine of cy pres, a court must find three conditions: (1) the gift or trust must be charitable in nature; (2) the language of the will or trust instrument, when read in the light of all attendant circumstances, must indicate that the donor had a general charitable purpose in mind and not just an intent to benefit a particular charitable institution; and (3) it must be determined to the court’s satisfaction that circumstances have so changed since the execution of the instrument making a disposition for religious, charitable, educational or benevolent purposes as to render impracticable or impossible a literal compliance with the terms of such disposition (see Matter of Syracuse Univ. [Heffron], 3 NY2d 665 [1958]).
With respect to the first condition, there is little question that the bequests to Child’s were charitable in nature. Prior to its reorganization as a charitable foundation, Child’s was, like all hospitals in New York State, a not-for-profit organization, dedicated to providing medical services to the general public, regardless of ability to pay. The court is fully convinced that Jane and Vincent Hummel intended their gifts to be charitable in nature. Their charitable intent is clear and unambiguous.
The second condition requires that the gift not only be charitable in nature, but that it have a general charitable intent, as opposed to an intent to benefit a specific institution. If the gift is not of a general charitable intent, and the trust instrument creating the gift was executed prior to July 10, 1996, the gift will be deemed to have lapsed, unless the grantor has provided for an alternative disposition. (The anti-lapse statute for trust remainders was not adopted by the Legislature until July 10, 1996, and is effective only to trusts created on or after that date, several years after Mr. and Mrs. Hummel executed their trust agreements on May 9, 1991.)
There are several indications that Jane and Vincent Hummel had a general, not a specific charitable intent in making their gifts to Child’s. Where a trust settlor benefits a variety of charities, courts are likely to conclude that the donor has a general charitable intent (see Matter of Bowne, 11 Misc 2d 597 [Sur Ct, NY County 1958]). Here, the Hummels, except for two bequests to a niece and a nephew, left their entire estates to charitable *1013 institutions. They were survived by no children or grandchildren.
Another indication that the gifts in question are general in nature is the fact that the gifts are made without restrictions and allow the benefitting institution full discretion in the use of the funds (see Matter of Syracuse Univ. [Heffron], supra). The Hummels both expressly provided in their trust instruments that “[t]his bequest is unrestricted and the Board of Trustees or other governing body may use and expend the same for the benefit of such Child’s Hospital in any manner it deems appropriate.” Additionally, courts also look to see if the donor made a gift over. Where there is an absence of a gift over, courts typically apply cy pres (see Matter of Goehringer, 69 Misc 2d 145 [Sur Ct, Kings County 1972]).
Based on the foregoing, the court finds that the gifts by Jane and Vincent Hummel to Child’s are representative of a general charitable intent and are, therefore, subject to application of the powers conferred upon courts by EPTL 8-1.1.
Findings
After reviewing all of the evidence presented, the court finds that there are no questions of fact to be determined. An examination of the nature of the charitable entity previously known as Child’s leads the court to conclude that the remainder bequests in the trusts created by Jane and Vincent Hummel are not properly payable to Episcopal Charities. The entity formerly known as Child’s has by judicial gestation transformed itself into a charitable foundation devoted principally to religious causes. The charitable entity known for more than 124 years as Child’s, whose primary, and almost exclusive purpose, for those 124 years, was the operation of a community hospital, essentially ceased to exist in 1999. It voluntarily surrendered its certificate to operate a hospital, and sold all of its land, buildings, and equipment to Albany Medical Center and AMC-SCC, two not-for-profit hospital corporations.
Conversely, Episcopal Charities, the legal successor to Child’s Hospital, has no connection with the institution which Jane and Vincent Hummel presumably had in mind when they decided to leave one third of their estates to a not-for-profit hospital. The missions of the hospital corporations and the mission of the charitable foundation are dissimilar, two are engaged in operation of traditional hospital facilities, and the other is a private foundation devoted to dispensing funds for the support of the Episcopal Church and its charitable endeavors.
*1014 The court finds that circumstances have changed in the period subsequent to the execution of the trust agreements by Jane and Vincent Hummel so as to render absolute compliance with the terms of the trusts impossible or impractical. There is in fact no legal entity named “Child’s Hospital.” The right to use the name has been sold by the original owner to a different, existing hospital corporation, which has incorporated a new entity, with a new name which has continued the activities as previously conducted by Child’s. Since there is no hospital at “25 Hackett Boulevard” using the name “Child’s Hospital,” literal compliance with the terms of the trust agreements is not possible. As stated in Kraetzer (supra at 439), the purpose of a gift to a hospital is “deemed to be the actual and continued provision of acute patient care services.”
Episcopal Charities is prevented from operating a hospital under the terms of its current certificate of incorporation and, therefore, cannot fulfill the purpose and intent of the Hummels’ bequests. Albany Medical Center and AMC-SCC continue the same activities of the former Child’s Hospital at the same site, with many of the same personnel. Considering that both Jane and Vincent Hummel were patients at the hospital, it seems convincingly obvious that the primary intent of their gifts to Child’s was for the purpose of continuing its mission of providing, on a not-for-profit basis, hospital care to the community.
Setting aside for the moment any considerations concerning the issues raised by Episcopal Charities regarding its rights arising out of the asset sale contract and addressing only the pure question of the Hummels’ intent, the court can find little support for a finding that Jane and Vincent Hummel would have intended that their gifts to Child’s should be given to an organization not interested in providing acute care in a traditional hospital setting, but instead primarily devoted to support of the mission and personnel of the Episcopal Church. Both donors were lifelong Methodists, active in their local Methodist Church. Neither were known to have any connection with the Episcopal Church or Diocese, and there is no evidence of any connection between Child’s and the Episcopal Diocese. Given these circumstances, it seems reasonable to assume that the Hummels intended to benefit the operation of a small, friendly hospital facility.
In the judgment of the court, the disposition that will most effectively accomplish the general purpose of the gifts by Jane and Vincent Hummel to “Child’s Hospital” would be a dis *1015 position of these remainder bequests to AMC-SCC, which now operates a hospital at 25 Hackett Boulevard, Albany, New York.
Based on the information in the record regarding Jane and Vincent Hummel’s lengthy devotion to the Methodist Church where they lived, the court would have no basis under the doctrine of cy pres to direct these bequests to a charity devoted to Episcopal causes. For the reasons herein stated and the findings previously made, the court directs that the trustee of each trust pay over and distribute the one-third remainder share of each trust left to “Child’s Hospital, 25 Hackett Boulevard, Albany, New York,” to AMC-SCC, to be applied without restriction to the general purposes of the corporation as provided in the trust instruments of Jane and Vincent Hummel.
The court has reviewed the accounts of the trustee and approves the same as filed. Commissions have been computed by the court and are awarded in accordance with the requests made in the filed petitions.
Cross Claims of Episcopal Charities and Contract Claim of Episcopal Charities
As previously set forth, Episcopal Charities commenced a separate action against Albany Medical Center and AMC-SCC for damages for breach of the asset sale agreement. In addition, in its answers to the accounting proceedings, Episcopal Charities asserts two cross claims against Albany Medical Center and AMC-SCC. The first cross claim asks the court to declare, pursuant to CPLR 3001, that the actions and agreements of Albany Medical Center and AMC-SCC constitute estoppel insofar as Albany Medical Center and AMC-SCC are requesting the court to direct distribution of the one-third remainder bequests to Child’s be made to them. Episcopal Charities requests that the court issue a declaratory judgment that Albany Medical Center and AMC-SCC are estopped from asserting any position, interest or claim against the foregoing bequest contrary to the provisions contained in section 10.12 of the asset purchase agreement.
The critical language in this paragraph states as follows:
“Buyer agrees that any bequests, contributions, donations and pledges made to Sellers which are now held or payable now or in the future to The Child’s Hospital that are both (a) made with the intention that they benefit The Child’s Hospital as currently owned and sponsored by the Episcopal Di *1016 ocese and (b) are not restricted in any way, shall be the property of Sellers and Buyer agrees to forward to Sellers any such proceeds in the event Buyer receives such Proceeds after closing.”
The second cross claim asserted by Episcopal Charities against Albany Medical Center and AMC-SCC asserts that Albany Medical Center and AMC-SCC waived and released any interest, position, and claim against the charitable bequests designated for Child’s Hospital based on the language of section 10.12 of the asset purchase agreement.
Episcopal Charities further states that controlling the issues before this court are the Supreme Court order and amended Supreme Court order previously entered approving the sale of Child’s assets, approving the change of its name and revising its corporate purposes. The two orders were issued in response to Episcopal Charities’ petition and amended petition asking for approval of a sale of the corporation’s assets pursuant to a written contract negotiated between the parties. As prescribed by the Not-For-Profit Corporation Law, the doctrine of quasi cy pres was applied by the court in determining that the restructured corporate entity was. entitled to the proceeds of the sale of the corporation’s real and tangible assets.
Episcopal Charities has also asserted a cross claim against the Attorney General for a declaration that the actions and approvals of the Attorney General in the previous proceedings constitute estoppel, waiver, and release as to any positions the Attorney General may take in opposition to those advanced by Episcopal Charities. The Attorney General appeared in the prior Supreme Court proceedings which approved the sale by Child’s Hospital of its hospital assets to Albany Medical Center and AMC-SCC, authorized revised purposes, and permitted a change Of name.
In response to the trustee’s question of to whom it should pay the bequests to Child’s Hospital, Episcopal Charities states that it is entitled to these bequests as the court-approved successor to Child’s Hospital and the application of the doctrine of quasi cy pres by the court in its decision approving the use of the money received from the sale of the hospital assets. Episcopal Charities asserts that section 10.12 of the asset sale contract is simply an affirmation of the provisions of Not-For-Profit Corporation Law § 1005 (a) (3) (A) and represents a statement in the contract of established statutory and decisional law governing bequests of this nature, as well as the direction of the *1017 court in its order approving the sale and disposition of the corporation’s assets.
Episcopal Charities further argues that the bequests in question have not actually failed, because Episcopal Charities is in essence “Child’s Hospital” only with a changed name and therefore the bequests are not properly the subject of a cy pres proceeding. Finally, Episcopal Charities claims that a proper application of the traditional cy pres doctrine would likewise entitle it these bequests based on the fact that it continues the Episcopal faith-based, nonprofit, health care provider missions pursued by Child’s Hospital continuously from its formation by the Episcopal Church in 1874. Episcopal Charities moves for summary judgment in its favor.
The doctrine of quasi cy pres is a product of the legislation creating Not-For-Profit Corporation Law § 1005 (a) (3) (A) and § 1008 (a) (15) (see Matter of Multiple Sclerosis Serv. Org. of N.Y. [New York City Ch. of Natl. Multiple Sclerosis Socy.], 68 NY2d 32 [1986]). The court has examined the prior orders of this court involving the application by Child’s Hospital for permission to sell substantially all of its assets, for permission to change its corporate purposes, and for permission to apply the proceeds of the sale of its assets to its new corporate purposes, and does not find that those orders are determinative as to the gifts here in question. The Honorable Bernard Malone’s and the Honorable Harold J. Hughes’ orders were directed at specific funds which were restricted at the time of creation to a specific purpose. Petitioners did not ask for, or receive, a blanket approval as to funds to be received in the future intended for hospital purposes and use.
Episcopal Charities’ reliance on the provisions of section 10.12 of the asset sale contract is, as a matter of public policy and law, unenforceable unless it is determined that section 10.12 accurately represents existing decisional and statutory law. As the court stated earlier in this decision, the court is not of the opinion that the provisions of the second sentence of Not-For-Profit Corporation Law § 1005 (a) (3) (A) are controlling in a proceeding under Not-For-Profit Corporation Law § 804, and that the provisions of EPTL 8-1.1 should be applied to the disposition of the bequests under the Hummel trusts. Accordingly, the court finds section 10.12 of the asset sale contract unenforceable and hereby dismisses Episcopal Charities’ breach of contract action against AMC-SCC, Albany Medical Center Hospital and Fleet National Bank.
*1018 It is further ordered that all pending motions, not addressed within this decision, are denied as academic.
The accounts of Jane and Vincent Hummel as submitted are judicially settled and allowed.

 Since the date of the commencement of the three proceedings before the court for decision, Bank of America and Fleet National Bank merged; the successor corporation is known as “Bank of America.”