OPINION OF THE COURT
Vincent W. Versaci, S.
The fiduciaries in each of the above trust and estate matters have petitioned this court to apply the doctrine of cy pres as codified in EPTL 8-1.1 to the charitable dispositions made by each of their respective decedents to the St. Clare’s Hospital of Schenectady, NY Foundation, Inc. In light of the commonality of issues, these matters were joined by stipulation of all interested *1047 parties by and through their attorneys. Following the completion of discovery, motions for summary judgment were filed by respondent St. Clare’s Hospital of Schenectady, NY Foundation, Inc., now known as St. Clare’s Corporation, and by respondents Ellis Hospital and Ellis Hospital Foundation, Inc. (collectively, Ellis).*
Counsel for St. Clare’s and Ellis entered into a stipulation of facts to be considered by the court in deciding these motions. The stipulated facts are condensed herein as follows. Ellis is a hospital licensed by the State of New York, providing a wide range of inpatient and outpatient services with its main facility located at 1101 Nott Street, Schenectady, New York. Up until June 2008, St. Clare’s Hospital also operated as a hospital licensed by the State of New York, providing similar services with its principal facility located at 600 McClellan Street, Schenectady, New York. On or about June 16, 2008, pursuant to an asset transfer agreement entered into between St. Clare’s and Ellis, Ellis assumed certain of St. Clare’s assets and St. Clare’s ceased operating as a hospital. However, its Foundation, a not-for-profit corporation that assisted the hospital in expanding and developing its services to the community, still exists, although it no longer supports or operates the hospital or provides acute patient care services.
The asset transfer agreement (the agreement) was entered into between St. Clare’s and Ellis in compliance with the report and recommendations of the Berger Commission which became law effective January 1, 2007. Pursuant to the agreement, St. Clare’s agreed to relinquish its license to operate as a hospital and agreed to be assumed and operated by Ellis. As of June 16, 2008, Ellis assumed sole responsibility for providing hospital and other health care services previously provided by St. Clare’s, and became the sole remaining hospital in Schenectady County. Pursuant to the agreement, Ellis acquired St. Clare’s facilities, including the facility at 600 McClellan Street, Schenectady, New York, which is now known as the McClellan Campus of Ellis Hospital. The McClellan Campus provides outpatient and primary care services and also maintains an emergency care facility. Patients requiring admission to the hospital are transported *1048 to Ellis’ main facility at 1101 Nott Street, Schenectady, New York, which is now known as the Nott Street Campus.
St. Clare’s revised its certifícate of incorporation on March 3, 2010, to reflect a new primary purpose: “To promote the health and well-being of the residents of the City and County of Schenectady, New York, by providing information, programs and special events promoting healthy habits, life-style choices and activities, all in a manner consistent with the convictions and teachings of the Roman Catholic Church.” However, since relinquishing its license to operate as a hospital, the principal activities of St. Clare’s have been the collection of receivables, the payment of payables and the administration of its debts. Since June 16, 2008, St. Clare’s Hospital Foundation has not engaged in any fund-raising activities, has not provided any charitable grants, and is not currently engaged in any charitable activities. Prior to the closure of the hospital, St. Clare’s Hospital Foundation had engaged in these types of activities, and all donations it received were turned over to the hospital.
The Kenneth T. Lally Revocable Trust
Kenneth T. Lally died a resident of Schenectady County on November 7, 2008. His last will and testament dated November 24, 1993, was admitted to probate on December 5, 2008, and letters testamentary were issued to Trasteo Bank, formerly known as Trasteo Bank New York. Pursuant to article YIII of Mr. Tally’s will, all the rest, residue and remainder of his estate poured over to the Kenneth T. Lally Revocable Trust that was established by an amended and restated trust agreement dated November 24, 1993 (the Lally Trust). Under the terms of the Lally Trust, St. Clare’s Hospital of Schenectady, NY Foundation, Inc. is designated as one of the various charitable beneficiaries to receive a portion of the trust remainder of the Kenneth T. Lally Charitable Remainder Trust-A and the Kenneth T. Lally Charitable Remainder Trust-B.
Among the 15 charities named in article IX (b) of the Lally Trust are (1) Ellis Hospital Foundation, Inc.; (2) Samaritan Hospital Foundation; (3) Sunnyview Hospital and Rehabilitation Center Foundation, Inc.; and (4) St. Clare’s Hospital of Schenectady, NY Foundation, Inc. Article IX (b) further provides: “I direct that the amounts bequeathed to all of the above charities with the exception of the four hospital beneficiaries be specifically utilized to either add to existing endowments of the said organizations or for the purpose of creating an endowment.”
*1049 The scrivener of Mr. Tally’s will and trust agreement has searched its files relating to the estate planning for Mr. Tally and has found no information to indicate the intent of Mr. Tally in creating the Tally Trust.
Estate of Vera O. Chase
Vera O. Chase died a resident of Schenectady County on March 20, 2007. Her last will and testament dated November 18, 1996, was admitted to probate on May 28, 2008, and letters testamentary were issued to Trustee. Pursuant to article VII.H. of Ms. Chase’s will, five percent of the rest, residue and remainder of her estate was bequeathed to “St. Clare’s Hospital of Schenectady, New York, Foundation Inc., 600 McClellan Street, Schenectady, New York, or its successor in interest.”
The scrivener of Ms. Chase’s will has searched its files relating to the estate planning for Ms. Chase and has found no information to indicate the intent of Ms. Chase in making her will.
Estate of Mary G. York
Mary G. York died a resident of Schenectady County on September 2, 2010. Her last will and testament dated June 10, 2004, was admitted to probate on December 14, 2010, and letters testamentary were issued to Frances T. Gagnon. Pursuant to article VIITE. of Ms. York’s will, five percent of the rest, residue and remainder of her estate was bequeathed to “St. Clare’s Hospital of Schenectady, New York, Foundation Inc., 600 McClellan Street, Schenectady, New York 12304, or its successor in interest.”
The scrivener of Ms. York’s will has searched its files relating to the estate planning for Ms. York and has found no information to indicate the intent of Ms. York in making her will.
The Motions
St. Clare’s argues in support of its motion for summary judgment that there is no basis for the court to apply the cy pres provisions of EPTT 8-1.1 (c) (1) to the charitable bequests that are the subject of these proceedings because there has not been a change in circumstances since the wills and trust at issue were executed that render impracticable or impossible a literal compliance with the terms of the respective dispositions. Despite the cessation of its hospital related functions pursuant to the Berger Commission’s mandate, St. Clare’s continues to exist, albeit under a different name and with a different charitable purpose. St. Clare’s claims that although it has not yet begun to do so, it intends to continue to provide the various *1050 types of community based health related charitable services that it had previously provided while operating as a hospital.
St. Clare’s further claims that it is unable to provide these comprehensive, health care services to the Schenectady community at the present time due to the pendency of these cy pres proceedings and a separate lawsuit commenced by Ellis against St. Clare’s seeking the disclosure of its fund-raising information and its donation lists. Although the separate lawsuit brought by Ellis recently settled, St. Clare’s contends that its ability to use existing and future donations that are necessary to carry on these community based services will heavily depend on the outcome of these cy pres proceedings. St. Clare’s argues that Ellis has failed to establish that each donor’s charitable intent was general rather than specific to St. Clare’s. St. Clare’s believes that the donative intentions of the respective decedents in these matters can best be honored by allowing St. Clare’s to receive the donations so that it can provide the charitable services outlined in its revised certificate of incorporation.
Ellis, on the other hand, argues in support of its motion for summary judgment that the court should exercise its cy pres powers and name Ellis as the proper alternative beneficiary of the bequests to St. Clare’s, nunc pro tunc to June 14, 2008, the date on which St. Clare’s ceased providing hospital services. Ellis argues that based on the undisputed and stipulated facts, the court must apply the cy pres doctrine and find that as a matter of law Ellis is the appropriate recipient of the gifts designated for distribution to St. Clare’s in all three cases.
Ellis contends that St. Clare’s relinquishment of its license to operate as a hospital in June 2008 constitutes a change in circumstances since the execution of the three instruments in question that renders the donors’ general charitable purposes incapable of being fulfilled if a literal compliance with the terms of the instruments is followed. Ellis argues that the undisputed facts establish that each donor manifested an intent to benefit St. Clare’s as a hospital, not the corporation itself. The fact that St. Clare’s has ceased operating as a hospital, regardless of its new stated purpose of providing community based health related services going forward, compels the application of cy pres consistent with the holdings in Matter of Hummel (9 Misc 3d 996 [2005], affd 30 AD3d 802 [2006]) and Matter of Kraetzer (119 Misc 2d 436 [1983]), and the cases cited therein. Ellis further argues that a decree ordering the distribution of the subject bequests to Ellis will most effectively accomplish the general charitable purposes intended by the three respective donors.
*1051 In its responding papers, the Attorney General argues in support of Ellis’ motion and in opposition to St. Clare’s, and requests that the court use its cy pres powers to reform the gifts to St. Clare’s by directing that they be distributed to Ellis in accordance with the terms of the donative instruments. The Attorney General essentially adopts the same arguments as presented by Ellis in its motion.
Ruling
The court’s authority to invoke the doctrine of cy pres is derived from EPTL 8-1.1 (c) (1), which provides in relevant part as follows:
“[Wjhenever it appears to [the] court that circumstances have so changed since the execution of an instrument making a disposition for religious, charitable, educational or benevolent purposes as to render impracticable or impossible a literal compliance with the terms of such disposition, the court may . . . make an order or decree directing that such disposition be administered and applied in such manner as in the judgment of the court will most effectively accomplish its general purposes, free from any specific restriction, limitation or direction contained therein.”
Courts throughout this state, including the Court of Appeals, have consistently recognized and applied the statutory authority found in EPTL 8-1.1 (c) (1). (See Matter of Wilson, 59 NY2d 461, 472 [1983]; Matter of Hummel, 9 Misc 3d 996 [2005], affd 30 AD3d 802 [2006]; Matter of Coffey, 187 AD2d 929 [1992]; Matter of Carper, 67 AD2d 333 [1979], affd 50 NY2d 974 [1980]; Matter of Othmer, 185 Misc 2d 122 [2000]; Matter of Kraetzer, 119 Misc 2d 436 [1983]; Matter of Goehringer, 69 Misc 2d 145 [1972]; Matter of Bowne, 11 Misc 2d 597 [1958].)
In order for a court to exercise its cy pres powers under EPTL 8-1.1 (c) (1), a three-prong test must be met:
“(1) the gift or trust must be charitable in nature; (2) the language of the will or trust instrument, when read in the light of all attendant circumstances, must indicate that the donor demonstrated a general, rather than specific, charitable intent; and (3) it must be determined to the court’s satisfaction that the particular purpose for which the gift or trust was created has failed, or has become impossible or impracticable to achieve.” (Matter of Othmer at 126.)
*1052 If these three conditions are met, the court then has the power to reform the gift in a manner which will most effectively accomplish its original, general purpose.
Thus, the court’s inquiry begins with the first prong of the test. There is no dispute between the parties that all three bequests at issue are charitable in nature. St. Clare’s, at the time that each of the respective instruments was executed, was operating as a hospital, providing acute patient care services. It is well settled that “[ajny gift or bequest for the promotion or advancement of health or medicine has always been recognized as a charitable gift.” (Matter of Othmer at 126-127, citing Matter of Lawless, 194 Misc 844 [1949], affd 277 App Div 1045 [1950]; Matter of Staten Is. Univ. Hosp., NYLJ, Apr. 23, 1993 at 27, col 4.) Since no argument has been made that these bequests are not per se charitable in nature, the first prong of the test is clearly satisfied.
With respect to the second prong of the test, the court finds that based on certain undisputed facts, each of the donors had a general, rather than a specific, charitable intent in making his or her respective gift to St. Clare’s. As the court held in Matter of Othmer, “where a trust settlor or donor of a gift shows an inclination to benefit a variety of charities, a court is likely to conclude that the donor had a general charitable intent and to apply the cy pres doctrine in the appropriate circumstances.” (Id. at 127, citing Matter of Bowne, 11 Misc 2d 597 [1958].)
A plain reading of the trust and wills at issue evinces a general charitable intent held by each of the donors in that each instrument names several different charitable organizations as beneficiaries. In the case of Mr. Lally, article IX of his trust, entitled “Charitable Bequests,” names 16 different charities as beneficiaries. The same charities are named in article X of the trust, entitled “The Kenneth T. Lally Charitable Remainder Trusts.” In addition, there is proof in the record before the court that Mr. Lally and his wife had been major donors of Ellis during their lifetimes, also indicating his general charitable intent.
In the case of Ms. Chase, there are eight charities named as residuary beneficiaries in article VII of her will. In addition, as in the case of Mr. Lally, there is proof in the record that Ms. Chase made a previous gift to Ellis during her lifetime. Lastly, in the case of Ms. York, five separate charities were named as beneficiaries in her will, indicating her general intent to benefit a variety of charities. Thus, the second prong of the test has been met in each of the three cases.
*1053 All that is now left for the court to decide is whether the third and final prong of the test is satisfied. To begin this analysis, the court must look to the particular facts and decide whether there is sufficient proof to establish either that the donors intended to benefit St. Clare’s as a hospital, which no longer exists, or that they intended to benefit the corporation itself, which does still exist. The Third Department was recently confronted with a similar inquiry in Matter of Hummel.
Unlike the facts in Matter of Hummel, where there was proof that the donors had received treatment at Child’s Hospital and were lifelong Methodists, there is no proof here that any of the donors ever received treatment at St. Clare’s or had any particular religious affiliation. However, this is where the factual distinction between this case and Hummel ends.
The facts in Hummel are as follows. Child’s Hospital, which had been named as one of three charitable residuary beneficiaries of the Hummels’ trusts, entered into an asset purchase agreement with Albany Medical Center Hospital whereby Albany Medical Center Hospital purchased the assets and facilities of Child’s Hospital. Child’s Hospital changed its name to “Episcopal Charities of Albany, Inc., and amended its corporate purpose, precluding it from operating a hospital and instead permitting it to fund faith-based health services.” (30 AD3d at 803.) Thus, similar to the undisputed facts of the case at bar, the corporation that had previously owned Child’s Hospital continued to exist, albeit under a different name and with a new purpose.
Based on the facts in Hummel, the Third Department, in affirming the Supreme Court’s application of the cy pres doctrine, found that “circumstances have changed making it impossible to carry out the specific charitable purpose of the trusts. Under these circumstances, pursuant to EPTL 8-1.1, the court was obligated to fashion a disposition of the trust property that, in the court’s judgment, would ‘most effectively accomplish its general purposes.’ ” (Id. at 804.) The Third Department held that the Supreme Court “appropriately determined that the testators intended to benefit the hospital operating at 25 Hackett Boulevard rather than the Episcopal faith-based corporation that previously owned that hospital but was now precluded from operating a hospital.” (Id.)
In rendering this decision, the Third Department adopted the holding in Matter of Kraetzer that the “presumed intent” and purpose of a gift to a hospital is “deemed to be for the objects of *1054 the corporation . . . [and] not [to the] corporation itself.” (Id.; see also Matter of Kraetzer at 440.) In deciding that a remainder gift intended for a hospital “should be applied under the cy pres power to a similar charitable use by reason of the cessation of the intended beneficiary’s charitable operations” (Matter of Kraetzer at 441), the Kraetzer court explained:
“[T]he courts have uniformly held that the intention of a testator in making a general gift to a charitable corporation was the furtherance of the charitable purpose for which the entity was formed as set forth in its charter. In the case of hospital corporations, such purpose is deemed to he the actual and continued provision of acute patient care services rather than the satisfaction of creditors’ claims.” (Id. at 439 [emphasis supplied and citations omitted].)
The hospital that had been named as a charitable remainder-man in Kraetzer, although still in existence, had been adjudicated as bankrupt and had ceased its usual operations. In designating an alternate recipient of the gift through the exercise of its cy pres powers, the court reasoned that
“the bare legal existence of a charitable corporation to which a testamentary disposition is made does not ensure entitlement to receipt of the gift in its favor; on the contrary, the cessation of its benevolent functions, whether or not accompanied by bankruptcy, has invariably been held to defeat its claim to the disposition notwithstanding continued corporate existence whether the winding down occurred before [or after] the death of the testator.” (Id. at 437-438.)
In relying on the court’s reasoning in Matter of Kraetzer, and the Fourth Department’s decision in Matter of Coffey, the Supreme Court in Matter of Hummel recognized the precedent established by these cases that “general gifts to a hospital are intended to fund hospital activities, and when the designated hospital’s functions have ceased, even if its formal corporate existence continues, the doctrine requires that such gifts be redirected to an active, charitable hospital.” (9 Misc 3d at 1010-1011.)
Based on the foregoing, the court finds that the legal presumption pronounced by the Kraetzer court and as adopted by the Third Department in Matter of Hummel applies to the particular facts of this case. It is St. Clare’s burden to rebut this presumption, which the court finds St. Clare’s has failed to do.
*1055 It is undisputed that at the time that each of the donors executed his or her respective trust or will, St. Clare’s was an operating hospital that provided acute patient care services. It is also undisputed that at the present time, St. Clare’s has ceased operating as a hospital, no longer provides acute patient care services, and is not currently engaged in any type of benevolent services. While St. Clare’s represents that it anticipates and intends to provide community based health related services going forward, the court agrees with Ellis that this projection is of no consequence since there is no proof in the record that any of the donors ever intended to benefit that type of activity. Echoing the words of the Kraetzer court, this court simply “cannot ignore the greatly changed circumstances which presently exist.” (Matter of Kraetzer at 440.)
Moreover, certain provisions contained in each of the donative instruments and other evidence contained in the record further support the conclusion that each of the donors manifested an intent to benefit St. Clare’s as a hospital. In the case of the Lally Trust, in addition to St. Clare’s, three other hospitals were named among the beneficiaries listed in articles IX and X of the trust. These four hospitals were singled out and referred to specifically as the “hospital beneficiaries” in article IX and again in article X of the trust, which provided that “the amounts bequeathed to all of the above charities with the exception of the four hospital beneficiaries be specifically utilized to either add to existing endowments of the said organizations or for the purpose of creating an endowment.” (Emphasis supplied.) In addition, as mentioned above, there is proof in the record that Mr. Lally and his wife had been major donors of Ellis during their lifetimes.
In the case of the Chase will, although St. Clare’s was the only hospital named in her will, there is proof in the record that Ms. Chase made a previous gift to Ellis during her lifetime, indicating her intent to benefit a hospital. In the case of the York will, Mid Coast Hospital in Maine was also named as a five percent residuary beneficiary along with St. Clare’s, further indicating her intent to benefit a hospital.
Notably absent from the facts is any indication that any of the donors had any particular affiliation to St. Clare’s as a corporation, that any of them had ever received treatment at the hospital previously owned by St. Clare’s, or that any of them had a religious affiliation to the Roman Catholic Church. Nor is there any proof that any of the donors, in naming St. *1056 Clare’s as a beneficiary, wanted to benefit a different charitable purpose other than its operation as a hospital providing acute patient care services.
The fact that neither Mr. Lally nor Ms. York, who both died after St. Clare’s ceased its operation as a hospital, had amended his or her trust or will in relation to naming St. Clare’s as a charitable beneficiary before he or she died is irrelevant. There is simply no proof that either of them had any knowledge that St. Clare’s had ceased operating as a hospital; that either of them had the capacity to change his or her instrument or the opportunity to do so; or that either of them had made a conscious choice not to amend his or her instrument. In fact, there is some indication in the record that both Mr. Lally and Ms. York did not have the requisite capacity to amend their respective instruments during the relevant time period before they died. In any event, the Kraetzer court has made it clear that the timing of the change in circumstances vis-á-vis the testator’s death does not factor into the analysis; “the cessation of its benevolent functions . . . has invariably been held to defeat its claim to the disposition . . . whether the winding down occurred before the death of the testator.” (Matter of Kraetzer at 438 [emphasis supplied].) The Third Department likewise did not even factor into its analysis the fact that Mr. Hummel died nearly two years after Child’s Hospital ceased operating a hospital and had not amended his trust.
Based on all of the above, there can be no doubt that each of the donors intended to benefit the operation of St. Clare’s as a hospital, not the corporation itself. St. Clare’s, as it existed at the time of the gifts at issue, with its original mission of providing hospital services, bears little resemblance to St. Clare’s as it exists today. It has ceased to exist in the manner that was known to the donors, that is, as a hospital providing acute patient care services. Thus, the court is satisfied that the particular purpose for which the gifts were created has failed, satisfying the third prong of the Othmer test. Accordingly, the court finds that it is appropriate to exercise its authority under EPTL 8-1.1 (c) (1) and apply the doctrine of cy pres to these cases.
This leaves the court with one last question: who should be named as the appropriate alternate recipient of the gifts at issue in order to “most effectively accomplish [their] general purposes”? The court finds that the facts of this case compel an outcome similar to the one in Matter of Hummel. Ellis, like Albany Medical Center Hospital which purchased the assets and *1057 facilities of Child’s Hospital, purchased the assets and facilities of St. Clare’s. Ellis is currently providing the hospital services that St. Clare’s had been providing at the time of the bequests, and at the same location from which St. Clare’s had been operating. Ellis, as the current operator of the hospital at 600 McClellan Street, Schenectady, New York, and the sole remaining hospital in Schenectady County, most closely resembles St. Clare’s as it existed at the time of the gifts at issue, and therefore is the proper alternative beneficiary of the gifts and is entitled to receive the gifts under the cy pres doctrine.
While the court acknowledges the argument of St. Clare’s that since the Foundation of St. Clare’s is still in existence and therefore technically speaking, distribution of the gifts to St. Clare’s is not impracticable or impossible to achieve, for all of the reasons set forth above, the court finds that the donors’ general charitable intent to benefit a hospital cannot be fulfilled by allowing the gifts to go to the Foundation. Even if St. Clare’s was presently engaging in community based health related services as it intends to do in the future, this fact would not change the court’s decision since such services are significantly different from the provision of acute patient care services provided by a hospital, which is the type of services the donors intended to benefit.
Lastly, although the court is naming Ellis as the proper alternative beneficiary of the gifts to St. Clare’s in the three above-referenced cases, the court sees no need to grant this relief nunc pro tunc to June 2008 as requested by Ellis. To the court’s knowledge, none of the gifts at issue have already been distributed to St. Clare’s, rendering any nunc pro tunc relief unnecessary.
Accordingly, based on all of the foregoing, respondent St. Clare’s motion for summary judgment is hereby denied, respondent Ellis’ motion for summary judgment is hereby granted to the extent that is consistent with this decision, and the cy pres petitions in each of the above-referenced cases are hereby granted.
The parties’ remaining arguments, to the extent not specifically addressed herein, have been considered and found to be unavailing.

 This court previously ruled in Matter of Trustco Bank (Lally) (33 Misc 3d 745 [2011]) that Ellis has standing to appear and participate in this matter as an interested party. When these proceedings were joined by the stipulation of the parties, Ellis was also added as a party to Matter of Chase and Matter of York.