OPINION OF THE COURT
David Demarest, J.
In this special proceeding, petitioner Edward John Noble Hospital of Gouverneur, New York (Hospital), seeks an order pursuant to Estates, Powers and Trusts Law § 8-1.1 (c), modifying the terms of three trusts which benefit the Hospital to permit the principal of the trusts to be pledged as collateral, or, in the alternative, be paid directly to the Hospital to meet its financial commitments.
Applicable Law
EPTL 8-1.1 (c) is the codification of the equitable doctrine of cy pres, a French term meaning “as near as,” under which a court reforms a written instrument with a gift to charity as closely to the donor’s intention as possible, so that the gift does not fail. It is often used in construing charitable gifts when the donor’s original charitable purpose cannot be fulfilled. (Black’s Law Dictionary 415 [8th ed 2004].)
“When a court determines that changed circumstances have rendered the administration of a charitable trust according to its literal terms either ‘impracticable or impossible’, the court may exercise its cy pres power to reform the trust in a matter that ‘will most effectively accomplish its general purposes’ (EPTL 8-1.1, subd [c]). In reforming trusts pursuant to this power, care must be taken to evaluate the precise purpose or direction of the testator, so that when the court directs the trust toward another charitable end, it will ‘give effect insofar as practicable to the full design of the testator as manifested by his will and codicil.’ ” (Matter of Wilson, 59 NY2d 461, 472 [1983] [citations omitted].)
Cy pres has been described as “the scheme of charitable approximation.” (Matter of Mills, 121 Misc 147, 150 [Sur Ct, Westchester County 1923].)
*281 Three conditions must be met before applying the doctrine of cy pres:
1. the gift or trust must be charitable in nature;
2. the donor must have demonstrated a general, rather than a specific, charitable intent, and;
3. circumstances have changed subsequent to the gift that render literal compliance with the restriction impossible or impracticable. (Matter of Othmer, 12 Misc 3d 919 [Sur Ct, Kings County 2006]; see Matter of Hummel, 30 AD3d 802 [3d Dept 2006]; Matter of Trustco Bank [Lally], 37 Misc 3d 1045 [Sur Ct, Schenectady County 2012].)
Some examples of cases where the cy pres doctrine has been invoked are illustrative:
A bequest was made to a school district to purchase land and construct specific athletic facilities. Because of the considerable growth of the trust corpus and the obvious general intent of the decedent to benefit the athletic pursuits of the school district, the court permitted the fund to finance a much more elaborate sports facility than originally intended. (Matter of Nellis Athletic Fund of Canajoharie Cent. School Dist. No. One, 42 Misc 2d 121 [Sur Ct, Montgomery County 1964].)
A trust for the benefit of a home for the blind was intended to provide seeing eye dogs for needy blind persons. Although the home provided kennels and care for seeing eye dogs of residents, it did not “provide” dogs. It was determined that the funds could be used by the home for the maintenance of kennels in light of the obvious intent of the donor to benefit the particular institution. (Matter of Angel, 33 Misc 2d 122 [Sur Ct, Kings County 1962].)
A gift to a specific hospital which had ceased to exist was converted to a gift to a similar hospital serving a similar population. (Matter of Bowne, 11 Misc 2d 597 [Sur Ct, NY County 1958].)
Direction that funds be used to provide scholarships to citizens of Armenian descent to a specific university in Armenia was impossible to implement during the Cold War. Court directed money be administered by an Armenian cultural organization to provide scholarships to centers of Armenian culture outside the “iron curtain.” (Matter of Aramian, 9 Misc 2d 148 [Sur Ct, NY County 1957].)
*282 The Present Application
The Edward John Noble Hospital of Gouverneur, New York, is a voluntary, not-for-profit hospital, organized under the laws of the State of New York in 1950 to provide primary hospital care for the citizens of the greater Gouverneur area. Over the past several years, many factors have contributed to a deteriorating financial health of the institution. Due to the economic downturn, including the closing of several local manufacturing facilities, the Hospital relies heavily on third-party payers such as Medicare and Medicaid. Those programs have consistently decreased their reimbursement rates. The Hospital has been forced to expend considerable money in modernizing and enhancing its facilities in order to provide adequate care and insure its patient population.
As a result of its ongoing difficulties in meeting daily operating expenses, particularly supplies for its on-site laboratory, the New York State Department of Health ordered the lab, and effectively the entire Hospital, closed in September 2012. To its credit, the Hospital has continued to provide many of its services and has made great efforts to affiliate itself with other health care providers to assist it in management in order to maintain its viability and to eventually resume full hospital operations.
The Current Trusts Sought to be Modified
Clayton F. Rush died in 1973, leaving a will which left his entire residuary estate to the Hospital to be deposited with the Gouverneur Savings and Loan Association, and that income only be paid semiannually for the general purposes of the Hospital. The corpus of the trust is now in excess of $377,000.
lone W Rodger bequeathed one half of her residuary estate to the Bank of Gouverneur (now Community Bank, N.A.) in trust for the Hospital, with the income to be paid semiannually. One half of the corpus of this trust is now in excess of $370,000.
Pearl Orvis bequeathed one half of her residuary estate to the Bank of Gouverneur (now Community Bank, N.A.) in trust for the Hospital, with the income from the trust to be used for operating expenses. The portion of the corpus of this trust attributable to the Hospital now totals in excess of $200,000.
It is uncontested that each of these benefactors had a general charitable intent to benefit the Hospital and the people of the Gouverneur community. However, due to the current return on *283 investments and the fees due to the trustees, these trusts have, for several years, been generating little or no income.
Relief Requested by the Hospital
The Hospital brought this proceeding seeking to have this court invoke its equitable powers under the cy pres doctrine to modify the terms of three trusts which were set up to provide a regular stream of income, so that the corpus of those trusts can be used either directly or as collateral for loans. In light of the paucity of the trusts’ income and the needs of the Hospital, it is alleged that these changed circumstances make literal compliance with the trust restrictions impossible or impracticable.
Positions of Other Interested Parties
Notice of these proceedings was given to the New York State Attorney General, Community Bank, N.A., Gouverneur Savings and Loan Association and the two Gouverneur churches who are co-beneficiaries of the Rodger and Pearl trusts. Neither church has appeared and taken a position on the relief requested. The Savings and Loan has indicated by letter that it takes no position. Both the Attorney General and Community Bank, N.A., have submitted papers raising issues with regard to the petition, but generally defer to the court as to the ultimate disposition.
Discussion
While the doctrine of cy pres has traditionally been applied to insure that the charitable intent of the donor be “approximated” by designating alternative similar beneficiaries, the relief sought here goes beyond that. Here, the Hospital is seeking to revise the terms of the trusts, not to designate an alternative recipient, but to provide more direct use of the trust funds to assist the Hospital in meeting its obligations. It does not argue that the literal application of the trusts’ terms are “impossible,” but rather that they are “impracticable.”
The three trusts are earning a little more than one percent per year and are paying fees to the corporate trustees that can exceed the income, leaving little or no benefit to the Hospital or necessarily invading corpus.
The Hospital relies upon the case of Matter of Othmer (12 Misc 3d 919 [2006]). After discussing the dramatic changes in the financing of health care in this country and, in particular, the travails of Long Island College Hospital, the Surrogate *284 determined that there was no inherent reason why the doctrine of cy pres should not apply to alter terms of a bequest to insure the benefit to the hospital as intended by the donor. (See also Matter of Othmer, 12 Misc 3d 414 [Sur Ct, Kings County 2006].)
While the Surrogate in both Othmer opinions made it clear the relief requested was unopposed, here, both the Attorney General and Community Bank, N.A., while not specifically opposing the petition, question the ability of the Hospital to continue to function in its present manner in light of its dire financial problems. They cite to Matter of Kraetzer (119 Misc 2d 436 [Sur Ct, Kings County 1983].) In that case, the hospital beneficiary entered into bankruptcy before the bequest could be implemented. The trustee in bankruptcy sought to obtain the funds to increase the bankrupt estate, and therefore provide some recompense to creditors. In refusing the trustee’s claims the court stated:
“Whatever its inherent merits, the courts have uniformly held that the intention of a testator in making a general gift to a charitable corporation was the furtherance of the charitable purpose for which the entity was formed as set forth in its charter. In the case of hospital corporations, such purpose is deemed to be the actual and continued provision of acute patient care services rather than the satisfaction of creditors’ claims.” (At 439 [citations omitted; emphasis added].)
Unlike the hospital corporation in Kraetzer, the petitioner here, although experiencing difficulties, is an ongoing entity providing health care to the Gouverneur community. Although it may very well have to reinvent itself to survive, the relief requested will assist it in remaining viable. The fact that it might fail and its assets will be needed to satisfy creditors is a chance that any enterprise must take.
There is little doubt each of the donors had a general charitable intent to benefit the citizens of their community by providing operating assistance to the Hospital. It is further found that current circumstances make it impracticable to carry out the specific directions of the trusts. Based upon the information provided by the Hospital as to the devotion to the Hospital each of the donors expressed during their lifetimes, it is natural to assume that had they known how little benefit was being received under the original terms of the trusts, they would have approved of changes to insure their charitable intentions.
*285 The proposed plan to use trust corpus as collateral for credit to provide ongoing operating cash is deemed appropriate and will not necessarily divert the trusts to creditors’ claims. While the specter of default is always present, that should not dissuade the court from allowing the modifications requested so as to assist the Hospital in continuing its mission.
The application of the petitioner is granted to the extent that the trusts can be used to collateralize necessary debts.